Good morning, Your Honor. May it please the Court, Daniel Winnick for the Federal Trade Commission. I'd like to reserve five minutes for rebuttal. This Court has held three times that a party to administrative proceedings before the Commission cannot sidestep the statutory review process and challenge those proceedings in District Court. The Board can obtain a judicial resolution of its state action defense by following the statutory process and petitioning for review in this Court if the Commission ultimately enters a cease and desist order. The reason we're before this Court for the second time before the conclusion of administrative proceedings is that the Board is determined to obtain immediate review of its state action defense rather than waiting until the end of the Commission's proceedings and following the statutory process. That process exists to prevent exactly this sort of inefficient review. The District Court lacked jurisdiction over the Board's challenge for two independent reasons. And even if the District Court had jurisdiction, it was wrong to enter a stay because the Board hasn't shown a likelihood of success on the merit. Let me just briefly summarize the two jurisdictional problems with the District Court's ruling. First, as this Court explained in Coca-Cola, the FTC Act, quote, contemplates judicial review only of an order of the Commission to cease and desist and then only in the Court of Appeals of the United States. That holding is clear and binding, and it's consistent with the broader framework the Supreme Court has articulated in Thunder Basin and Elgin, which requires that even constitutional challenges be pursued through the ordinary judicial review scheme. It precludes the Board from challenging an interlocutory ruling of the Commission, and it precludes the Board from challenging any ruling of the Commission in a District Court. Second, and independently, the District Court lacked jurisdiction because the Commission's ruling was not final agency action. The ruling doesn't satisfy the typical requirements for finality under Bennett v. Speer. The Board argues that it satisfies the collateral order doctrine under Martin v. Memorial Hospital Gulfport, but Martin is inapplicable here, both because the proceedings in question were brought by a government agency rather than a private plaintiff, and because the Board is effectively a private entity for state action purposes. And again, even if the Commission's ruling were a collateral order under Martin, the collateral order doctrine addresses only the timing of review by a jurisdictionally proper court. It doesn't create jurisdiction in a District Court where Congress has provided for judicial review of agency action exclusively in the Court of Appeals, in this Court. With that, I'd like to waive the remainder of my uninterrupted time and address what questions the Court may have. Well, Mr. Winnick, Edith Jones here. I'd like to know the status of the FTC proceeding, because the order that the Board is challenging was issued in April of 2019. It's a year later. Why couldn't it just finalize the order in a few days? The answer, Your Honor, is the stay we're challenging here. The District Court barred the Commission from doing anything in its proceedings at all, presumably on pain of contempt. So that's why this is an appealable injunction. That's why there's been no end to the proceedings before the Commission. Relatedly, what if the Board never takes action, just keeps this in perpetuity? Is there any form for relief available? I'm sorry, Your Honor, if the Commission never takes action, or if the District Court never takes action? I'm sorry. I'm talking about the Commission, the FTC. So if the FTC never issues a cease-and-desist order, could it just tie this up in perpetuity? I understand. And when you're addressing that, can you also address the amici brief that says that if it takes a long time, that this will inhibit good-faith decision-making by medical boards, et cetera, and that people won't serve, and that all of these normal functions of quasi-government entities will be stymied? Can you address both of those points? Sure, Your Honor. So as to the first question, if there were some exceptional scenario in which an amici brief inhibits good-faith decision, there is always the fail-safe of a proceeding in this court under the Whole Rights Act. This Court has said in the JTB case that, like any scenario where we're doing agency action, it has the power to compel action unlawfully withheld, something like that. So there's no—certainly, the Board hasn't suggested that there's any prospect that the Commission takes, you know, forever and ever to issue a final decision, precluding a review of it. But in the event that—in the hypothetical event that that were to happen, it would always be the fail-safe of the view under the All Rights Act. As to the amicus brief, you know, it's a common scenario for defendants—respondents to administrative proceedings, like defendants to judicial proceedings, to lament the burdens of litigation. And those burdens are real. We're not diminishing them, but the rule of finality exists for a reason, which is that even in the context of judicial review, it's sufficient and important for the workings of the judicial system to allow appellate review after the conclusion of proceedings. I would argue those concerns are even heightened further in the administrative context where review entails the injection of the judicial branch into the workings of the executive branch. So, you know, litigation burdens are real, but the state has the power to protect board members from the ultimate imposition of liability by providing a clear articulation of its reasons to support allegedly anti-competitive action and by providing active supervision of what the board does. There is no rule that any time a respondent to administrative proceedings would rather they end sooner. It can obtain immediate review of them. And so we think the concerns raised by amicus can largely be dealt with by providing the sort of clear articulation and active supervision that's necessary to protect the board members and the board itself from ultimate liability. Mr. Winnick? This is Judge Higginson. Of course, I was on the panel before. It really looks like what the district court did here was just read the final footnote in our opinion and say, well, the Fifth Circuit has said that the APA door is still open. So my question to you is, is that footnote, which cited no authority, errant and wrong? And is your best authority for the 1973 Coca-Cola decision, which I read to be somewhat qualified when the special review procedure might be limited in its scope? That's, I'm referring to the Supreme Court's decision 15 years later in Bowen. And therefore, it would seem to me your alternate basis might be the better way to decide this case, which is to assume there, it wasn't meant to preclude all APA review in district courts. But we would just go through the usual, is there still available adequate review under 45? What do you think of that? So, Your Honor, the footnote, I don't think the footnote purported to address or that can reasonably be read to address the basis of the district court's ruling here. I think all the you know, the board has challenged the commission's ruling under the FTC Act by petition for review. It hasn't purported to bring an APA action. It hasn't said we could sort of convert this to an APA action. And in any rate, you know, we couldn't consider this to be an APA action because any such action would have to be brought in the district court. It didn't go on to suggest that such an action would be viable. It didn't consider the issues. But wouldn't we be the first circuit to actually say that this specialized review procedure sweeps aside all district court decision? Wouldn't we be the first circuit to say that if we went on preclusion exclusivity? So the cases that have most directly addressed, how the FTC Act scheme affects APA review are this court's cases from, you know, the 70s, I don't have, I think this issue arises rarely, frankly, I don't have, you know, precisely. That would be very consequential for us to therefore say no APA review in any district court. It was one thing to say, they've been very clear. You can't leapfrog to us. You know, that was the earlier decision. But to rely on the 70s, then my last question I'll stop asking so many was, didn't the Supreme Court step back a little bit 15 years later? I don't think so, and I think what this court would be saying is frankly fairly commonplace in it, and it follows directly not just from this court's decisions in the 70s, but from Thunder Basin and Elgin and everything else, which is that where Congress has provided for a comprehensive detailed process for judicial review of agency actions that, you know, parties before the agency have to follow that process and they can't go running to district court. Now plaintiff here has suggested that the process under the FTC Act is different from the one in the Mine Act under Thunder Basin because it's less comprehensive. It only addresses cease and desist orders, and with respect, that's just not right because a cease and desist order is the form of final agency action that the commission may issue in this form of proceeding. The scheme here is just as comprehensive. Let me ask you a couple questions then. Had there not been the say order, at what point would a cease and desist order have followed in the normal court what the FTC decided in April of 19? So a trial before the commission was scheduled, as I recall, for September 2019. I don't know how long after a trial it would be typical to enter a cease and desist order, but the proceedings were moving, you know, at a reasonable pace and, you know, and in fact, the commission has spoken here about the importance of, to the public interest of allowing antitrust law to be enforced in a timely fashion. And would it have been possible for the intention that it was directed or ordered sufficiently by the state to reclaim immunity? So I want to make sure I understand your question correctly, but tell me if this doesn't answer it. The board, notwithstanding the commission's April 2019 order, the board could have introduced evidence as proceedings continued before the commission to show the developments in Louisiana law subsequent to the April 2019 order provided the sort of active supervision that the commission held was lacking at that point. And the board has pointed to several things in its brief before this court, which it claims provide active supervision that we don't think they do, but it could certainly have made that argument to the commission. Yeah. Okay. Well, that's my point because you don't really need to reach the exclusivity and other questions. If you determine that this wasn't as part of the merits of the claim. That's right, your honor. And to be clear within the commission historical compass and expertise. That's correct. And this court could equally well resolve this case on either of the two threshold jurisdictional issues. It could decide that there was no final agency action here just as the Supreme court did in standard oil without basing its ruling on the thunder basin channeling argument. I should probably at this point, reserve the balance of my time. Counsel, could I just follow up? Of course. It would be easier to just say that we're in the middle of the proceeding and not reach the issue with the judge Higginson asked you about wouldn't it? Because we wouldn't be then the first to do anything. No work. It would be easier just to resolve the case on its interlocutory nature. I think that would be a perfectly sound basis to resolve the case, your honor. Just to say that there wasn't final agency action here and not reach the thunder basin channeling issues. Yes. I'll reserve the balance of my time. Okay. Thank you very much. Next is Mr. Greenstein. Good morning, your honors. And may it please the court. I'd like to begin with by briefly putting this case into its proper context. And I think along the way, I will have the opportunity to address many of the questions that the court has already asked. And certainly, I will be open to questions after a few minutes of opening presentation. So the Louisiana legislature delegated to the Louisiana real estate appraisers board, the authority and the responsibility to enforce state and federal regulation mandates over residential mortgage appraisals. Given that clear articulation in the law and legislative and executive branch supervision over the board's rules and conduct, the state empowered the board to regulate market competition under state action immunity from both antitrust trial and antitrust liability. That was the state's intention before the FTC issued its complaint. And the state has reinforced its political accountability over the board by its official actions since that time. The board filed its APA complaint to preserve that assertion of state action immunity because the commission's April 10th order dismissed the board's immunity in capital letters and bold print in its entirety and with finality. In granting the board's motion to stay, the district court temporarily held in abeyance this commission's adjudication process under the familiar four factors to give the court time simply to decide the case before the board's immunity from antitrust trial was irrevocably lost. The district court properly exercised its federal question jurisdiction, its authority under the APA, and its discretion to grant the But first as an initial matter, I think this court should dismiss the FTC's appeal for lack of appellate jurisdiction. The district court stay order is just that, a stay, not an injunction, and it's not appealable under 1292A1. The canvas holder says that injunctions and stays do have certain properties in common. For example, they both command or forbid particular actions, but they do so for different purposes. A stay operates on the judicial proceeding itself. It preserves the status quo pending review, which is what the district court did here, while an injunction grants all or some of the substantive relief being sought by the plaintiff. The stay order here does not grant any of the substantive immunity being sought by the board. It simply gives the district court time to decide whether the board has such an immunity before that immunity is irretrievably lost. APA section 705 specifically authorizes the entry of the stay, and FTC rule 3.41 contemplates that district courts hearing collateral proceedings may exercise their authority to stay the FTC's adjudication process. Now, this court's cases have found orders affecting other courts to be injunctions only where those affected proceedings are separate and distinct from the case under review. And, for example, in Costanjo v. Jackson Marine, the order ordered the parties not to file suits in other jurisdictions in Hunt v. Bankers Trust. The court ordered the transfer of bankruptcy actions from other jurisdictions back into the court's jurisdiction. But that's not the posture of this case. The stay order here is no different from this court's stay in the prior case, Louisiana Board 1, under Federal Rule of Appellate Procedure 8A. That was not an injunction. That was not an abusive discretion. And the same is true for the district court's stay order here. On the second point, the district court had federal question jurisdiction and authority to issue the stay order under the APA. The April 10th order does meet the requirements for review under section 704. It's final agency action for two reasons. First, under Bennett v. Speer, the dismissal in total marks the commission's consummation as to the board's assertion of state action immunity. And it deprives the board of its right to immunity against an administrative trial. And to address one of the last points in Judge Jones's question, and Judge Mr. Winnick, I believe it was perhaps Judge Elrod's point, this is, in fact, a final agency action because the only ability of the board to renew its motion for asserted state action immunity is not at the discretion. The only right that the board has is to raise new facts post-trial, post-judgment, post-issuance of a cease and desist order to show that those new facts somehow merit the review and modification of the cease and desist order. But that does not preserve the board's right to immunity from trial, which is what this court has held in Martin v. Gulfport Hospital. So the district court had it right. The privilege at that point will already have been lost, and it's inherently unrecoverable. And second, of course, the district court observed that the order is reviewable as a collateral order, and Martin v. Gulfport Hospital holds that an order dismissing a governmental entity's claim of state action immunity from trial easily meets the three common factors. The harm here to the board from the loss of immunity to just the cost of litigation, as Mr. Winnick suggested. This court's decisions hold that the inability of a state to enforce its laws constitutes irreparable harm. And of course, there's harm to the board's and the state's dignitary interests, the distraction of state officials from performance of their official duties, and the deterring of qualified individuals from public service. And none of the Supreme Court or Fifth Circuit cases cited by the FTC holds on the contrary, including Coca-Cola, FTC v. Standard Oil, the Supreme Court, American General Insurance Company, Texaco, Frito-Lay. In all those cases, the orders under review did not meet the standards for finality under either 704 or the collateral order doctrine. And all those issues could be meaningfully reviewed after conclusion of the hearing with no irreparable harm to those plaintiffs, and that is not true here. Contrary to the FTC's contentions, the FTC Act Section 5C is not a comprehensive review scheme that precludes APA review. The analysis begins, of course, with the statute, whether the statutory text shows congressional intent that the scheme should be deemed comprehensive either explicitly or implicitly. Now, the FTC concedes that Section 5C is not explicitly preclusive. They argue only implicit preclusion. That's their brief at page 21. But the textual limits of Section 5C also refute any implication of preclusive intent. Louisiana Board 1 held that the review channel provided by Section 5C is limited only to cease and desist orders. In reaching that conclusion, this court drew textual distinctions between Section 5C and statutes like the Mine Act or the Social Security Act, which provide for review of any order or any final order. And I would note that in all of the cases in which the Supreme Court has found implicit preclusion, including Thunder Basin and Elgin and the D.C. Circuit's case of SEC v. Jarcozy, all of those statutes capaciously applied to all orders or all final orders, so they were susceptible to such broader implications. And the same is true of this court's decision in Bank of Louisiana v. FDIC, where the right to review any order was coupled with a no court shall have jurisdiction clause, which expressly made that review mechanism exclusive. In no case was the language as restrictive as Section 5C. So the preclusive intent is really not fairly discernible from the statutory text. The cabined language of Section 5C simply cannot be stretched any further by implication. And Section 5D does not make the scheme exclusive either. That provides for a triggering event. Upon the filing of the record with the Court of Appeals, the FDC is divested of jurisdiction to further modify the order, such as under Section B, the only avenue currently available to the Board, if it wishes, after the issuance of a cease and desist order to try to get review of a state action immunity claim. Now, Congress added this triggering clause to Section 5D in 1958 in Public Law 85-791, and it's important because that law included a savings clause that nothing in the law should be construed to repeal or modify any provisions of the APA. Congress would not have found it necessary to include that clause unless the APA could also apply to FDC final actions other than cease and desist orders. As a matter of policy, review of final commission orders other than cease and desist orders is consistent with Congressional intent. But the APA... Counsel, the vote is beyond the five minutes that the presiding judge has authorized. Can we ask you a few questions now? Oh, of course, Ron. I'm sorry. I thought it was half the time, 10 minutes, but please go right ahead. I'm sorry. I didn't... Please go right ahead. Fine. Okay. Can you address the issue about the state... This is not just an administrative stay of this proceeding here. It's a state and other entities proceeding, and so there must be a showing of likelihood of success on the merits, and here there's an explicitly no showing of likelihood of success on the merits. Can you please address that? You kind of seem to have touched on it, but not really fulsomely address that problem with the order here. Okay. Well, Your Honor, to the contrary, as to the likelihood of success, a strong showing of success on the merits, the state order issued by the district court twice articulates the strong showing standard, and it found the board's showing adequate to the task, and the board's showing was consistent with what is the touchstone of state action unity. That is, as in North Carolina Dental, Parker's rationale is to ensure that the states accept political accountability for the anti-competitive conduct that their laws permit and control, and the state of Louisiana here has accepted political accountability through its actions and its words over what the board has So, for example, the AMC Act, the Appraisal Management Company Act, authorizes the board to enforce the precise state law at issue in the complaint of the FTC and to promulgate the precise regulation that's at issue in the FTC's complaint. Okay, counsel, what I'm struggling with, though, is the court's statement that says without reaching the merits of this matter, the board has made an acceptable showing that the state has exercised sufficient oversight. You have to delve in to show likelihood of success. You can't say I'm sidestepping the issue. You're saying that that's just a clause that doesn't have any meaning? No, Your Honor. The way that I would interpret it is, I think as is appropriate upon a state order. On a state order, the court should not issue a final determination on the merits, and I think that is what the court was saying here. But he was saying that as far as the showing that's required for the purposes of a state order, the strong showing of a likelihood of success, the board had shown it here. And I would point the court here to Record 112-116. That is, a Senate resolution unanimously adopted that says that the state legislature twice reviewed and approved the board's rules, and that the adoption of the board's rules were the sovereign acts of the state of Louisiana and its legislature. That is a clear showing that the state intends the board to have state action immunity. So I think that, in fact, there has been a strong showing. And in addition, if you look at Executive Order 17-16, which is at Record 92-93, it shows that the governor took additional actions and ordered his executive agencies to actively supervise the board's regulation and its enforcement of those regulations under the Louisiana Administrative Procedure Act and under his executive orders. And so I think that does constitute a strong showing of the likelihood of success to establish the existence of political accountability taken by the state over the actions of the board. What do you do with the argument, though, that says that the APA review is limited in time to the record at the time of the challenged action, not that you can't look at the post-action event? Right. Well, Your Honor, those statements by the state — well, the executive orders would be within the time because they were, in fact, part of the record before the district court. But the subsequent Senate resolution does not itself bestow state action immunity. All the actions taken by the legislature previously had happened in 2013 and in October and November of 2017, before the board filed its motion. What the Senate resolution states is, in response and perhaps some degree of frustration in response to the commission's dismissal of the board's action defense, no, in fact, we did what we said we did and we meant what we said. The board's actions in adopting the rule are the sovereign acts of the legislature and the state of Louisiana. Mr. Greenstein, you said three times immunity from trial, citing Martin. And of course, you know from the briefs that their response is that our court had an en banc in surgical care. And then Judge Dennis, who authored Martin, authored acoustics, pulling back and saying it's not an immunity from trial. It's a defense, especially where it isn't a private citizen suing the public, but the federal government regulating a quasi-private entity. If we interpret acoustics to apply to your situation, would you then agree that even if the commission has made a final consummation on this issue, you still have an adequate opportunity to challenge that after the cease and desist order, if it comes, comes to us? Your Honor, let me first challenge the notion that the board is somehow to be treated as a private entity. North Carolina Dental didn't say that that board was anything other than a state agency. Our board is a state agency. All it said was that under those circumstances, that the board also had to show that it was actively supervised by the state. There was no active supervision in that case. Here's the way I read acoustics. It was saying you can have a pure public entity, but if you then delegate it instead to people who are active participants in the market, that's a quasi-private, quasi-public. That's different. And especially if you say it's the FTC suing, you really don't have what I think of as classic immunity principles implicated. But that may be an economic debate that, you know, I really don't pretend to know. I'm just wondering if you could address acoustics directly. Sure. The way that I read acoustics, acoustic systems versus Wenger, Your Honor, is that where the party is a pure private party, it had, it was a pure private entity claiming somehow to have a state action immunity. In that case, it had none of the dignitary interests of the state at stake. None of those interests would possibly be offended by any action of bringing that private party to trial. Here you have the opposite. You have a state agency that has been empowered by the state of Louisiana and by its legislature to regulate the market for real estate appraisals and delegated certain responsibilities established under the office of the governor. These individuals were appointed by the governor. They were confirmed by the Senate. They were removable for cause by the governor. This is a state agency. It is not merely a pure private entity. And for that reason, it also has the same dignitary interests of the state at stake here because when a trial is held, state officials, including the board members, the executive director of the board who is an employee of the state, you have the commissioner of administration, you have the division of, the director of the division of administrative law, all of them will be required to, they'll be distracted from the performance of their official duties by having to sit for trial. I know you get going. I guess my question though is sort of twofold. Number one is in your view, the merits of the case are intimately bound up with all of the jurisdictional issues. So that you want us to declare that there's no jurisdiction for precisely the same reasons that you want to rule on the merits. And I'm a little confused about that because that if we were in federal court to begin with on this, we would say the case, you don't dismiss for lack of jurisdiction because the case, you go to a further point before you say that you can dismiss on the merits of the case. And so I view this as sort of interrupting the FTC proceeding in that way that we would not do in federal court, number one. And number two, surely this is not the FTC's first rodeo as regards the state action immunity issue. Surely FTC has gone after other regulatory boards on questions of state action immunity. Would that be correct? So to answer your last question first, your honor, yes, that is correct. However, in this jurisdiction, in the fifth circuit under Martin, the denial of state action immunity to a governmental entity is subject to collateral review. That does make this different from several other jurisdictions. And the extent of state action immunity under Martin includes an immunity from trial, not just an immunity to liability. And for that reason, it is thoroughly proper for the board to have brought an action under the APA to preserve its right of state action immunity. And further to your point, your honor, this is in some respects a case of forum shopping because the FTC could have brought its case against the board in federal district court in the middle district of Louisiana in the first instance. And if it had done so, I think there would be no question whatsoever that the order of the district court denying state action immunity to the board would have been appealable under Martin. Don't mistake me for in any way minimizing the importance of the issue you raised or the likelihood of success on the merits ultimately. But I am concerned with the idea just as to whether we have a warrant to interrupt the agency proceedings, which for all we know would have concluded in a reviewable order and you would be before us right today on that had they gone forward. Well, your honor, I think that is the essence of the right of appeal provided under the Administrative Procedure Act, that where there is another final order of an agency, it is immediately remediable, particularly where there is no other apparent right to preserve ability to preserve that right in another court proceeding. Here, I think it's clear that the board's right of immunity to trial would be irreparably lost if the trial, in fact, were to be in the context of FTC proceedings. It has not arisen in a circuit, your honor, where the circuit has explicitly said that the denial of state action immunity to a governmental entity is subject to collateral order review. This case is unique in that respect. I see my time has expired. If there are any other questions, I'm happy to address them now. No, sir. Thank you very much. Thank you, your honor. Okay. We'll go back to Mr. Winnick for rebuttal. Thank you, your honor. I think I'll be brief. Just to start quickly with Martin. Martin rested explicitly on the need to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties that they be successful at 1395 and 1396. There is no similar indignity that arises in proceedings brought by the federal government. And Martin also rested explicitly on the fact that the defendant was a public entity. And as Judge Higginson's questions have noted, this court later held in acoustic systems that private defendants don't have the right to immediately appeal the rejection of state action defense. And even if it were otherwise a close call whether Martin would apply in this context, Martin should be read narrowly in light of its inconsistency with what the unbanked court later said about the state action doctrine in surgical care center. Now, finally, and perhaps most importantly, again, even if the commission's order in this case were to satisfy the requirements of collateral order doctrine under Martin, nothing about the collateral order doctrine concerns the timing of review by a jurisdictionally proper tribunal. It doesn't create jurisdiction in a district court to review agency action where Congress has otherwise channeled exclusive review of agency action to the court of appeals. So for many reasons, we think this is a case where the board has an adequate means of obtaining judicial review of its state action defense. There's no basis for APA jurisdiction and there's certainly no basis to interrupt the proceedings of an executive branch agency in progress, especially where, you know, but for the board's repeated efforts to secure premature judicial review, those proceedings might have concluded by this point and the board could obtain its review in the ordinary course. I'm happy to entertain further questions from the court. I had one in your brief on page 28. I think I'm quoting correctly. You say immunity principles do not apply in suits bought by the federal government. That seems overbroad. Is that consistent with North Carolina Dental and Parker? So I think what we meant to say, and I could look at the brief, but I think what we meant to say is that the same is that the interests that have been held to support the immediate appeal of a denial of immunity in certain other contexts don't apply in the same way where a federal government is bringing antitrust proceedings. So there are certainly, you know, the board, for example, the 11th Amendment doesn't bar proceedings against the state by the federal government. The board has noted that it can assert a state action defense, even against antitrust proceedings by the federal government. But the point is that the sort of indignity, the interest that have been held to support immediate appeal by a public defendant to private proceedings don't apply where the federal government is bringing the proceedings. Can you remind us which circuits allow for that? The broadest formulation of the question where a private litigant brings antitrust proceedings and it's a public defendant. The, I believe the 11th. Yes, there is. There is at least one other court like like the Fifth Circuit, Your Honor. Yes. The 11th. It's escaping me at the moment, Your Honor. I'd be happy to if you'd like, but it's escaping me at the moment. In one minute or your minute left, could you just edify me a little bit on your price fixing theory that exists here? You want to try that? Sure, Your Honor. So the FTC's complaint in this case asserts, and this is described as well in the statement in this court's prior opinion, asserts that Rule 31101 differs from federal, from the federal regime in the sense that under federal law and federal regulation, appraisal management companies have several ways of establishing presumptive compliance with the reasonableness requirement of the Dodd-Frank Act. But under Rule 31101, they are limited to the free means set forth in the rule. And thus, the FTC asserts that the rule prohibits the operation of the free market. The complaint also asserts that in its operation, in its application by the board, the rule has been applied to effectively mandate compliance with a fee survey conducted by Southeastern Louisiana University. So that's the theory on which the commission asserts anti-competitive conduct. There are no further questions. We'd ask that the district court's stay order be reversed and that the commission's proceedings be allowed to conclude. Thank you, Your Honor. Thank you very much. Goodbye.